UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| REDES ANDINAS DE COMUNICACIONES S.R.L., | : | | |
| | : | | |
| Petitioner, | : | Civil Action No.: | 22-3631 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 14, 17 |
| | : | | |
| THE REPUBLIC OF PERU, *et al.*, | : | | |
| | : | | |
| Respondents. | : | | |

MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR DEFAULT JUDGMENT;

GRANTING RESPONDENT PRONATEL'S MOTION TO SET ASIDE ENTRY OF DEFAULT

I.  INTRODUCTION

Petitioner Redes Andinas de Comunicaciones S.R.L. ("Redes") prevailed in arbitration

proceedings against Respondents and seeks to enforce its arbitral awards under the Convention

on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention").  All

three Respondents initially failed to appear, and the Clerk entered default against them.

Respondents Republic of Peru ("Peru") and the Ministry of Transportation and Communications

("MTC") have failed to appear following entry of default, and Redes moves for a default

judgment against those entities.  Because the Court concludes that the arbitration exception to the

Foreign Sovereign Immunities Act ("FSIA") applies, and Redes has satisfied the FSIA's

evidentiary standard, the Court grants the motion for a default judgment and enforces the awards

as to Peru and its constituent ministry.  Respondent Programa Nacional de Telecomunicaciones

("PRONATEL")—an instrumentality of Peru with separate legal personhood—opposes the

motion and moves to vacate the Clerk's entry of default as to itself.  The Court finds that

PRONATEL meets the federal rules' standard to set aside entry of default and grants

PRONATEL's motion.

## II.  FACTUAL BACKGROUND

In 2015, Redes entered into two agreements with PRONATEL for the installation of

broadband infrastructure in Peru.[1]  *See generally* Ex. 1 to Pet'r's Mot. Default J., ECF No. 14-3;

Ex. 3 to Pet'r's Mot. Default J., ECF No. 14-5.  PRONATEL is an instrumentality of Peru under

the FSIA's definition.  *See* Pet. to Confirm Arbitration Award ("Pet.") ¶ 6, ECF No. 1; Resp't's

Mem. Supp. Mot. Set Aside Default and Opp'n Pet'r's Mot. Default J. ("Resp't's Mot.") at 1,

ECF No. 17-1.  Redes resorted to arbitration against PRONATEL and the MTC after disputes

arose during its performance of the contracts.  On August 2, 2022, an Arbitral Tribunal

conducted under the International Chamber of Commerce International Court of Arbitration in

Lima, Peru, rendered awards in favor of Redes in both arbitrations.  *See* Award 24471/JPA, Ex.

B to Pet. to Confirm Arbitration Award, ECF No. 1-3; Award 24472/JPA, Ex. D to Pet. to

Confirm Arbitration Award, ECF No. 1-5.

Redes now seeks to enforce those Awards in this Court pursuant to Chapter 2 of the

Federal Arbitration Act ("FAA") and the New York Convention.  *See* Pet. ¶ 10; Convention on

the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10,

1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.  On December 8, 2022, this Court granted Redes's

motion for issuance of letters rogatory to effect service of process on Respondents under the

Inter-American Convention and Additional Protocol.  ECF No. 5.  Redes asserts that

---

[1] Redes explains that the agreements were originally made with Peru's Telecommunications Investment Fund ("FITEL"), which was later "absorbed by merger by MTC" and renamed Programa Nacional de Telecomunicaciones.  Pet. to Confirm Arbitration Award at 4, ECF No. 1.

PRONATEL was served on October 5, 2023, *see* Ferraro Decl. ¶ 13, ECF No. 19-1, which

PRONATEL does not contest.  Peru's Ministry of Foreign Affairs certified on December 1,

2023, that the MTC and the Peruvian Ministry of Economy and Finance ("MEF") had been

served, and the Department of State forwarded that certification to the Court the following

month.  Affidavit of Service, ECF No. 11.  Redes moved for entry of default on January 31,

2024, after Respondents failed to answer or otherwise respond to the Petition.  ECF No. 12.  On

February 1, 2023, the Clerk entered default against Respondents.  ECF No. 13.  Redes then

moved for a default judgment on February 20, 2024.  *See* Pet'r's Mot. Default J. ("Pet'r's Mot."),

ECF No. 14.  PRONATEL subsequently appeared on March 5, 2024, opposed the motion for

default judgment, and moved to set aside the default.  *See* Resp't's Mot.  PRONATEL clarified,

however, that it makes these filings "solely on its own behalf," and not on behalf of Peru or the

MTC.  *Id.* at 1 n.1.

## III.  LEGAL STANDARD

### A.  Default Judgment

Federal Rule of Civil Procedure 55 sets forth a two-step process for a party seeking

default judgment: entry of default, followed by entry of default judgment.  *See* Fed. R. Civ. P.

55; *see also Int'l Painters & Allied Trades Indust. Pension Fund v. Rose City Glass Co.*, 729

F. Supp. 2d 336, 338 n.3 (D.D.C. 2010) (citing Fed. R. Civ. P. 55; *Eitel v. McCool*, 782 F.2d

1470, 1471 (9th Cir. 1986); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).  First, after a

defendant has failed to plead or otherwise defend against an action, the plaintiff may request that

the clerk of the court enter default against that defendant.  *See* FED. R. CIV. P. 55(a).  Second,

following the clerk's entry of default, and where the plaintiff's claim is not for a sum certain,

Rule 55(b)(2) permits the plaintiff to apply to the court for entry of default judgment.  *See* Fed.

R. Civ. P. 55(b)(2).  This two-step process provides the defendant or respondent an opportunity to move the court to set aside the default before the court enters default judgment.  *See* Fed. R. Civ. P. 55(b)–(c).

Although entry of default judgment may at times be appropriate, it is "not automatic." *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 74 (D.D.C. 2017) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)) (footnote omitted)).  Because "strong policies favor the resolution of disputes on their merits," *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980), the court "normally" must view the default judgment as "available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* at 835 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)).  Even if a defendant appears "essentially unresponsive," *id.*, the court still has an "affirmative obligation" to ensure that it has subject matter jurisdiction over the suit, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996).  The court must also "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6.  "Although the plaintiffs retain 'the burden of proving personal jurisdiction,'" "[i]n the absence of an evidentiary hearing," plaintiffs can "satisfy that burden with a prima facie showing." *Braun*, 228 F. Supp. 3d at 74 (internal quotation marks omitted) (quoting *Mwani*, 417 F.3d at 6–7).  To make the required prima facie showing, plaintiffs may rely on "their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at 7.

A court addressing an FSIA claim can enter default judgment against a foreign state only if "the claimant[s] establish[] [their] right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e); *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir.

2003) ("The court . . . has an obligation to satisfy itself that plaintiffs have established a right to

relief.").  This statutory standard mirrors the default judgment standard of Federal Rule of Civil

Procedure 55(d).  *Hamen v. Islamic Republic of Iran*, 401 F. Supp. 3d 85, 90 (D.D.C. 2019)

(citing *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), *vacated and remanded*

*sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020)); *Hill v. Republic of Iraq*, 328 F.3d

680, 683 (D.C. Cir. 2003)).  The "FSIA leaves it to the court to determine precisely how much

and what kinds of evidence . . . plaintiff[s] must provide, requiring only that it be 'satisfactory to

the court.'"  *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir.

2014) (quoting 28 U.S.C. § 1608(e)).

## B.  Set Aside Entry of Default

"The court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55.  A

court considering whether to set aside entry of default must consider three factors: "whether (1)

the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was

meritorious."  *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980);

*see also Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1966), *Erick Rios Bridoux v. Eastern*

*Air Lines, Inc.*, 214 F.2d 207, 210 (D.C. Cir. 1954).  A defendant or respondent's "allegations are

meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a

complete defense."  *Keegel*, 627 F.2d at 374.  "The 'good cause' standard is designed to

empower courts to consider the equities that specially arise in a given case."  *Gilmore v.*

*Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016).

## IV.  ANALYSIS

The Court first considers the motion for a default judgment as to Peru and the MTC,

which have failed to appear.  The Court observes that Peru and the MTC are not in fact separate

defendants, but rather one entity: the Republic of Peru.  The Court determines it has subject

matter jurisdiction over the action to enforce the Awards, as well as personal jurisdiction over

Peru.  The Court further examines the documentation Redes submits with its Petition, concluding

that it has satisfied the FSIA's evidentiary requirements governing default judgments against

foreign states.  The Court next turns to PRONATEL's motion to set aside the default, concluding

that it has met the forgiving standard for a foreign sovereign to set aside entry of default and

defend an action in a United States court.  Because the Court grants PRONATEL's motion, it

denies Redes's motion for default judgment as to PRONATEL.

### A.  Motion for Default Judgment

The Court proceeds through four steps in examining Redes's motion for a default

judgment against Peru and the MTC.  The Court first considers whether the two entities are in

fact distinct.  The Court then examines its subject matter jurisdiction, the Court's personal

jurisdiction over Respondents, and finally whether Redes has made a sufficient showing to

enforce the Awards.

#### 1.  Ministries as Constituent Parts of Peru

Redes has listed both the Ministry of Telecommunications and the Republic of Peru as

respondents in this matter.  *See* Pet. at 1.  As discussed below, Redes also effected service on the

Peruvian Ministry of Economy and Finance.  *See* Affidavit of Service; Ferraro Decl. ¶ 7, ECF

No. 19-1.  The Court concludes that these ministries comprise constituent parts of the

government of the Republic of Peru for the purposes of liability, the default judgment, and

service of process.

In examining whether an entity is a separate legal person, or rather an arm of the foreign

state itself, courts typically consider factors such as whether an enabling statute establishes it as a

separate judicial entity with the power to sue and be sued, whether it has responsibility for its own finances, whether it is managed by a board selected by the government, and whether the instrumentality is run as a distinct economic enterprise.  *See First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 624 (1983).  In determining whether an entity is a foreign state for the purposes of service of process, courts similarly ask "whether the core functions of the foreign entity are predominantly governmental or commercial."  *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994).

Courts have typically held that conventional government ministries are synonymous with the state itself for the purposes of service of process and liability.  In *Transaero*, the D.C. Circuit considered whether the Bolivian Air Force was a foreign government or an agency or instrumentality of the Republic of Bolivia for the purposes of service of process.  *Id.* at 151.  The court reasoned that "it is hard to see what would count as the 'foreign state' if its armed forces do not," given that "[a]ny government of reasonable complexity must act through men organized into offices and departments."  *Id.* at 153.  "If a separate name and some power to conduct its own affairs suffices to make a foreign department an 'agency' rather than a part of the state itself, the structure of section 1608 will list too far to one side."  *Id.*  Courts have held that the Russian Ministry of Culture, for instance, meets the FSIA's definition of a foreign state. *Magness v. Russian Fed'n*, 247 F.3d 609, 613 n.7 (5th Cir. 2001).  Similarly, "the [Iranian] Ministry of Foreign Affairs must be treated as the state of Iran itself rather than as its agent." *Roeder*, 333 F.3d at 234; *see also Garb v. Republic of Poland*, 440 F.3d 579, 594 (2d Cir. 2006) (concluding that Poland's Ministry of the Treasury was a foreign state for the purposes of the FSIA's takings exception); *Entes Indus. Plants, Constr. & Erection Contracting Co. Inc. v. Kyrgyz Republic*, No. 18-cv-2228, 2020 WL 1935554, at *6 (D.D.C. Apr. 22, 2020) (holding that

the Kyrgyz Ministry of Transport and Communications "is not entitled to the presumption that it

is separate from the sovereign, the Kyrgyz Republic").

In *Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*, the Second

Circuit considered whether the Russian Federation and the Government of Russia were separate

entities for the purpose of confirming an arbitration award rendered against the latter.  361 F.3d

676, 684 (2d Cir. 2004).  The Government of Russia, the court explained, was "a political organ

of the Russian central government."  *Id.* at 678.  The court concluded that under federal common

law, "no meaningful legal distinction can be drawn between a sovereign and one of its political

organs."  *Id.* at 688.  So too did the court conclude that "the Russian Federation and the

Government are not separate 'parties' for the purposes of confirming and enforcing an arbitral

award under the Convention."  *Id.* at 690.  The award against the Government of Russia could

therefore be enforced against the Russian Federation.  *Id.* at 678.

These cases are instructive here.  As far as the Court can tell, both Peruvian ministries

have "predominantly governmental" core functions rather than those of separate economic

enterprises.  *Transaero,* 30 F.3d at 151.  Redes describes the MTC, for instance, as a "ministry of

Peru" and a "a 'political subdivision' of Peru."  Pet. ¶ 5.  The parties similarly debate whether

PRONATEL receives public funding or legal representation through the MTC, which

presupposes that the MTC bears those governmental responsibilities.  *See* Resp't's Reply at 10,

ECF No. 22.  The ministries plainly form "part of the state itself" and not agencies with separate

legal personhood.  *Transaero,* 30 F.3d at 153.  There is "no meaningful legal distinction"

between the MTC, the MEF, and the Republic of Peru.  *Compagnie Noga*, 361 F.3d at 688.  As a

result, the MTC and MEF are synonymous with the Republic of Peru, Peru is liable for the

Awards against the MTC, *see id.* at 678, and service of process on the MTC and the MEF would be sufficient to serve Peru, *see Transaero*, 30 F.3d at 151.

2.   Sovereign Immunity and Subject Matter Jurisdiction

"[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts," and a federal court has subject matter jurisdiction only if "a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89 (1983)).

The FSIA's arbitration exception states that a foreign state shall not be immune from the jurisdiction of U.S. courts in an action "to confirm an award made pursuant to . . . an agreement to arbitrate" if "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6).  The D.C. Circuit has held that the arbitration exception requires a district court to find three "jurisdictional facts": "(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir., 2024) (citing *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021), and *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015)); *see also Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022) (applying the standard).

The Court finds these three jurisdictional facts here.  Redes attaches the disputed contracts to its motion, both of which include agreements to arbitrate under the auspices of the Chamber of Commerce of Lima.  Ex. 1 to Pet'r's Mot. Default J. art. 22, ECF No. 14-3; Ex. 3 to

Pet'r's Mot. Default J. art. 22, ECF No. 14-5; *see also* Award 24471/JPA (reproducing the text

of the arbitration agreement); Award 24472/JPA (same).  Redes has provided the Court original

and translated copies of the two Awards.  *See* Original Award 24471/JPA, Ex. A to Pet. to

Confirm Arbitration Award, ECF No. 1-2; Original Award 24472/JPA, Ex. C to Pet. to Confirm

Arbitration Award, ECF No. 1-4; Award 24471/JPA; Award 24472/JPA.  Redes additionally

points to the New York Convention as a treaty governing award enforcement.  *See* Pet'r's Mot.

at 1; *see also Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123–24 (D.C. Cir. 1999)

("[T]he New York Convention 'is exactly the sort of treaty Congress intended to include in the

arbitration exception.'" (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018

(2d Cir. 1993)).  Peru has been party to the New York Convention since 1988, *see* United

Nations Treaty Collection, Convention on the Recognition and Enforcement of Foreign Arbitral

Awards, at https://perma.cc/NY8N-2HVT, and the arbitral awards were rendered within the

territory of Peru.  Award 24471/JPA ¶ 22; Award 24472/JPA ¶ 22; *see also* New York

Convention art. 1(1) ("This Convention shall apply to the recognition and enforcement of arbitral

awards made in the territory of a State other than the State where the recognition and

enforcement of such awards are sought").  The Court thus concludes that the arbitration

exception to the FSIA applies to Peru, that the Court has subject matter jurisdiction over the

action, and that Peru lacks sovereign immunity in this case.

### 3.  Service and Personal Jurisdiction

"Personal jurisdiction exists over a non-immune sovereign so long as service of process

has been made under section 1608 of the FSIA." *Estate of Heiser v. Islamic Republic of Iran*,

466 F. Supp. 2d 229, 255 (D.D.C. 2006) (citation omitted); 28 U.S.C. § 1330(b) ("[P]ersonal

jurisdiction over a foreign state shall exist as to every claim for relief over which the district

courts have jurisdiction . . . where service has been made under section 1608 of this title."). Section 1608 provides four ways to effect service on a foreign sovereign or political subdivision of a foreign state: [1] "special arrangement for service between the plaintiff and the foreign state or political subdivision;" [2] "in accordance with an applicable international convention on service of judicial documents;" [3] in cases where the first two methods do not suffice to effect service, "by sending a copy of the summons and complaint and a notice of suit" including translations "into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned," or [4] if the third method also fails,

> by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

There is no indication of a "special arrangement" governing service between Redes and Peru or its agencies. Redes thus properly appealed to an international convention for the service of judicial documents: the Inter-American Convention on Letters Rogatory and Additional Protocol, Jan. 30, 1975, 14 I.L.M. 339. That treaty explicitly allows for "service of process," *id.* art. 2(a), and provides for execution of letters rogatory "in accordance with the laws and procedural rules of the State of destination," *id.* art. 10.[2] Peru's Ministry of Foreign Affairs

---

[2] The Convention additionally states that "[t]he authority of the State of destination shall have jurisdiction to determine any issue arising as a result of the execution of the measure requested in the letter rogatory." Inter-American Convention art. 11.

certified on December 1, 2023, that a Peruvian court had successfully served the MTC and the

MEF.  *See* Affidavit of Service; Ferraro Decl. ¶ 7.  Because the arbitration exception applies and

Redes completed service of process under the Inter-American Convention, the Court concludes

that it has personal jurisdiction over Peru.

### 4.  Right to Relief

Before entering a default judgment, the FSIA requires Redes to "establish" its "claim or

right to relief by evidence satisfactory to the [C]ourt."  28 U.S.C. § 1608(e).  Here, the question

is whether Redes has met its burden to show that the Awards should be enforced pursuant to the

New York Convention and its implementing legislation codified at 9 U.S.C. § 207.  The New

York Convention states that "[e]ach Contracting State shall recognize arbitral awards as binding

and enforce them in accordance with the rules of procedure of the territory where the award is

relied upon, under the conditions laid down in the . . . articles [of the Convention]."  New York

Convention art. III.  The Convention is clear that a state "may refuse to enforce the award only

on the grounds explicitly set forth in Article V of the Convention."  *TermoRio S.A. E.S.P. v.*

*Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting *Yusuf Ahmed Alghanim & Sons v.*

*Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).  The relevant statutory provision dictates that

"[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of

recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.

An arbitral award falls under the Convention if it meets two requirements.  *See*

*Zhongshan Fucheng Indus. Inv. Co. v. Fed. Republic of Nigeria*, No. 22-cv-170, 2023 WL

417975, at *5 (D.D.C. Jan. 26, 2023).  First, the arbitral award must be made within the

jurisdiction of a signatory country.  *See TermoRio*, 487 F.3d at 934 ("Under the Convention, 'the

critical element is the place of the award: if that place is in the territory of a party to the

Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration.'" (quoting *Creighton*, 181 F.3d at 121)).  As the Court established previously, this arbitration took place in Lima, Peru, and Peru is party to the New York Convention.  *See supra* Sections II, IV.A.2.  Second, pursuant to a declaration the United States made upon its accession to the treaty, the arbitral award must "aris[e] out of a legal relationship . . . which is considered as commercial," including "contract[s]."  9 U.S.C. § 202.  In *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99 (D.C. Cir. 2015), the D.C. Circuit concluded that a contract between a telecommunications company and the Government of Belize for investment in the latter's communications infrastructure fell within the Convention's definition of "commercial."  *See id.* at 103–04.  The Court concludes that the contract here for investment in Peru's broadband infrastructure was similarly commercial and falls within the ambit of the New York Convention.

The Awards are subject to enforcement here under the Convention.  Because Peru has not appeared here, it does not raise any Article V objections to enforcement.  There is no indication, for instance, that the Awards "ha[ve] been set aside," *see* New York Convention art. V(1)(e), or that they exceed the scope of "the terms of the submission to arbitration," *id.* art. V(1)(c).  Redes has thus met its burden to enforce the Awards against Peru.

### B.  Motion to Vacate Default

Redes additionally moves for a default judgment against PRONATEL following entry of default against that entity.  *See generally* Pet'r's Mot.  PRONATEL has now appeared and both opposes the default judgment, *see* ECF No. 18, and seeks to set aside entry of default, *see* ECF No. 17.  PRONATEL argues that the Court should set aside the default because the defenses it plans to raise are meritorious, its delay was not willful, and Redes will not be prejudiced by an

order setting aside the default.  *See generally* Resp't's Mot.  These defenses include the

assertions that (1) Redes failed to attach the arbitration agreement to the Petition, such that the

Court lacks subject matter jurisdiction under the FSIA, *id.* at 6–9; (2) omitting the petition

additionally failed to comply with Article IV of the Convention, *id.* at 14–15; (3) Redes failed to

properly serve PRONATEL under Peruvian law, *id.* at 9–12; and (4) PRONATEL has

insufficient contacts with the forum to support personal jurisdiction, *id.* at 12–14.  PRONATEL

additionally reserves the right to raise defenses under Article V of the New York Convention.

*Id.* at 6.  Redes opposes PRONATEL's motion to set aside the default.  *See* ECF No. 20.  The

Court concludes that it must nonetheless set aside the entry of default as to PRONATEL.

The parties agree that PRONATEL is an instrumentality of Peru, and the Court proceeds

with that understanding.  *See* Pet. ¶ 6; Resp't's Mot. at 1.  As such, PRONATEL is by definition

"a separate legal person" from the state of Peru.  28 U.S.C. § 1603; *see also* Restatement

(Fourth) of Foreign Relations Law § 452 cmt. g (2018) ("Courts in the United States will

ordinarily respect the separate legal personality of a foreign state's agency or instrumentality.").

This conclusion is bolstered by PRONATEL's assertion that it can and does file "solely on its

own behalf."  Resp't's Mot. at 1 n.1.  The Court may thus enter a default judgment against Peru

while declining to do so regarding PRONATEL.

Whether a motion to vacate entry of default meets Rule 55(c)'s good cause standard

depends on "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3)

the alleged defense was meritorious." *Jackson*, 636 F.2d at 836 (quoting *Keegel*, 627 F.2d at

373).  Courts employ "strong policies favoring the resolution of genuine disputes on their

merits." *Id.* at 835.  In addition, "[o]n a motion for relief from the entry of a default or a default

judgment, all doubts are resolved in favor of the party seeking relief." *Id.* at 836.

1.  Meritorious

The Court first considers whether any of PRONATEL's alleged defenses are meritorious.

PRONATEL argues that the above-stated defenses weigh strongly in favor of setting aside the

default.  Resp't' Mot. at 5.  Redes argues that PRONATEL's defenses are "foreclosed as a matter

of law."  Pet'r's Opp'n Resp't's Mot. Set Aside Default ("Pet'r's Opp'n") at 5, ECF No. 19.  The

Court finds a "hint of a suggestion" of a "complete defense" in the arguments PRONATEL

raises, as it asserts its sovereign immunity and defenses under Article V of the New York

Convention.

To succeed on this factor, PRONATEL must make only a "modest" showing.  *Gilmore*,

843 F.3d at 966.  It is satisfied by "even a hint of a suggestion which, proven at trial, would

constitute a complete defense."  *Keegel*, 627 F.2d at 374.  The defendants in *Keegel*, for instance,

alleged lack of subject matter jurisdiction and contested the plaintiffs' claim on the merits in

their motion to set aside the default.  *Id*.  The D.C. Circuit found those arguments sufficient to

vacate the entry of default even though they were "somewhat broad and conclusory."  *Id.*; *see*

*also Owens*, 374 F. Supp. 2d at 10 n.5  (vacating entry of default where defendant submitted

declarations and affidavits contesting evidentiary issues).  It is not clear whether PRONATEL

will ultimately succeed on any of its legal arguments, and the Court's above analysis granting a

default judgment against Peru may sow a seed of doubt about some of those theories.  The Court

notes, however, that PRONATEL additionally seeks to raise defenses under Article V of the

New York Convention, which implicate factual issues that may impact the enforceability of the

Awards.  Resp't's Mot. at 6.

Regardless of whether PRONATEL's arguments would be sufficiently meritorious if it

were any other litigant, the Court is keenly aware of PRONATEL's status as an instrumentality

of a foreign sovereign that may enjoy sovereign immunity.  There is a "strong presumption against the entry of default judgment against a foreign state that has appeared in the case and expressed a desire to contest the claims."  *Owens*, 374 F. Supp. 2d at 9; *see also Acree v. Republic of Iraq*, 658 F. Supp. 2d 124, 127 (D.D.C. 2009) ("[W]here, as here, the defendant is a foreign sovereign, default judgment is especially disfavored."); *Afr. Growth Corp. v. Republic of Angola*, No. 17-cv-2469, 2018 WL 6329453, at *7 (D.D.C. Dec. 3, 2018) (stating that "a sovereign nation . . . deserves additional leeway now that it seeks to set aside the entry of default and defend itself in court").  The D.C. Circuit has counseled that "[i]ntolerant adherence to default judgments against foreign states could adversely affect this nation's relations with other nations and 'undermine the State Department's continuing efforts to encourage . . . foreign sovereigns generally[ ] to resolve disputes within the United States' legal framework."  *Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987) (quoting Brief for the United States as Amicus Curiae); *cf. FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (explaining that, when considering vacatur of default judgments under Rule 60(b), that "we've stressed a foreign sovereign's interest—and our interest in protecting that interest—in being able to assert defenses based on its sovereign status.").  Recognizing PRONATEL's status as a foreign state under the FSIA's definition, *see* 28 U.S.C. § 1603, the Court concludes that its arguments are sufficiently meritorious to weigh in favor of setting aside the entry of default.

### 2.  Willfulness

It is additionally unclear, at best, whether PRONATEL's default was willful. PRONATEL argues that it has always intended to vindicate its rights in this litigation, *see* Resp't's Mot. at 15, and that PRONATEL informed Redes of its intent to appear before Redes

16

filed its motion for a default judgment, *see* Resp't's Reply at 15.  Redes asserts that PRONATEL evaded service of process during mid-2023 and that PRONATEL offers no explanation as to its failure to appear.  *See* Pet'r's Opp'n at 13–14.  The Court does not find this factor to weigh in favor of a default judgment here.

Redes asserts that PRONATEL was served in early October 2023, *see* Ferraro Decl. ¶ 13, which PRONATEL does not dispute.  PRONATEL nonetheless declined to appear until soon after entry of default on February 1, 2024.  *See* Clerk's Entry of Default, ECF No. 13; *see generally* Resp't's Mot.  PRONATEL asserts that this delay was not willful, although it provides no explanation for its failure to appear for four months.  *See* Resp't's Mot. at 15–16; Resp't's Reply at 15.  In the absence of clear evidence of willfulness, however, the Court must resolve this issue in favor of PRONATEL.  *See Jackson*, 636 F.2d at 836; *Biton v. Palestinian Interim Self Gov't Auth.*, 233 F. Supp. 2d 31, 33 (D.D.C. 2002) (citing the court's "duty to accord the defendants the benefit of the doubt" regarding entry of default).

Even assuming that PRONATEL's default was in fact willful, this factor does not weigh in favor of maintaining the entry of default for two reasons.  First, PRONATEL entered an appearance and sought to litigate these matters soon after the Clerk entered the default.  Second, courts in this district have regularly disregarded the willfulness of a foreign sovereign's default once it appears in court to defend an action.  *See Afr. Growth Corp.*, 2018 WL 6329453, at *6; *Owens*, 374 F. Supp. 2d at 10 n.5 (setting aside Sudan's default that "appear[ed] to have been at least somewhat willful" in part due to presumption against default judgment against foreign state); *Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 81–83 (D.D.C. 2011) (vacating entry of default despite finding defendants' default to be willful where the "Court is now convinced that [defendants] are truly committed to litigating this matter").  "Even when a default

is willful, a district court does not necessarily abuse its discretion by vacating a default when the asserted defense is meritorious and the district court took steps to mitigate any prejudice to the non-defaulting party." *Gilmore*, 843 F.3d at 966.  For these reasons, considerations of PRONATEL's intent do not counsel the Court against setting aside the entry of default.

### 3.  Prejudice

Finally, the Court considers whether a set aside would prejudice Redes.  PRONATEL asserts that vacating the entry of default would only result in delay and further litigation, which it posits is not a cognizable harm.  Resp't's Mot. at 16–17.  Redes responds that the delay here would "unnecessarily" draw out proceedings that, in its view, should be summary in nature. Pet'r's Opp'n at 14–15.  The Court agrees with PRONATEL that any prejudice here does not favor entry of a default judgment.

Delay alone is generally insufficient to establish prejudice.  *See Keegel*, 627 F.2d at 374; *Shatsky*, 795 F. Supp. 2d at 83.  More tangible harms to a party might include "loss of evidence, increased difficulties of discovery, and an enhanced opportunity for fraud or collusion."  *Shatsky*, 795 F. Supp. 2d at 83 (quoting *Gilmore*, 675 F. Supp. 2d at 110 (D.D.C. 2009)).  In addition, "[d]etriment in the sense that [a] plaintiff will be required to establish the merits of its claim does not constitute prejudice for purposes of setting aside an entry of default."  *Afr. Growth Corp.*, 2018 WL 6329453, at *6 (quoting *Loveday v. MetLife Inc.*, No. 16-cv-00246, 2016 WL 10591974, at *2 (D. Ariz. Nov. 1, 2016)).

The Court concludes that Redes would not be prejudiced if the Court sets aside the entry of default and allows PRONATEL to litigate its sovereign immunity and the Awards' enforceability under Article V.  PRONATEL appeared and moved to vacate the default within weeks of the Clerk's entry of that default.  In addition, Redes's motion for a default judgment

does not represent wasted effort, as the Court granted the motion as to Peru.  Redes does not suffer prejudice cognizable under Rule 55(c) by the need to litigate the issues PRONATEL raises in its motion to set aside the entry of default.  Redes is correct that some courts have recognized prejudice when a party "*unnecessarily* draw[s] out proceedings."  *Koch Mins. Sarl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 41 (D.D.C. 2020) (quoting *Konoike Constr. Co. v. Ministry of Works, Tanzania*, No. 17-cv-1986, 2019 WL 1082337, at *3 (D.D.C. Mar. 7, 2019)).  The Court does not agree that further litigation is "unnecessary" here given that PRONATEL seeks to assert its sovereign immunity and raise factual issues under Article V of the New York Convention.  This conclusion additionally furthers the "strong policies favoring the resolution of genuine disputes on their merits."  *Jackson*, 636 F.2d at 835.

* * *

Recognizing that PRONATEL is an instrumentality of a foreign state, the Court concludes that the Clerk's entry of default should be set aside because PRONATEL raises issues that contain "a hint of a suggestion which, proven at trial, would constitute a complete defense," *Keegel*, 627 F.2d at 374, because there is no evidence its default—which it quickly moved to correct—was willful, and because Redes would suffer no prejudice by the set aside.  Because the Court grants PRONATEL's motion to set aside the entry of default, it denies Redes's motion for a default judgment as to PRONATEL as moot.

## V.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Redes's Motion for a Default Judgment is **GRANTED IN PART** as to the Republic of Peru and **DENIED IN PART** as to PRONATEL; and it is

19

**FURTHER ORDERED** that PRONATEL's Motion to Set Aside Entry of Default is **GRANTED**; and it is

**FURTHER ORDERED** that Redes shall file a proposed final judgment against the Republic of Peru on or before October 24, 2024.  That proposed judgment shall include all elements included in the Awards, including a current calculation of pre- and post-judgment interest.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 24, 2024                                      RUDOLPH CONTRERAS
                                                               United States District Judge